The next case for argument this morning is Berkley Regional Insurance Company v. Debbie Bernick-Odom. Good morning, Your Honors, and may it please the Court, Counsel. My name is Tyler Seward and I'm here today representing the appellant, Debbie Bernick-Odom, on appeal from the District Court of North Dakota. Ms. Bernick-Odom respectfully requests that the Eighth Circuit reverse and remand with instructions to the District Court to enter judgment in her favor. The District Court erred in its interpretation of the definition of underinsured motor vehicle. And it did so by including property damage coverage with the applicable limit of bodily injury liability insurance when it was performing the UIM comparison. By UIM comparison, I mean that comparison between the tort feasor's liability insurance policy and the tort victim's underinsured motor vehicle policy. So while remembering that North Dakota's remedial UIM statutes are designed to make insurance whole, any interpretation of underinsured motor vehicle must be harmonized to give meaning to related provisions, to avoid absurd or illogical results, and to ascertain legislative intent. So the statutory definition of underinsured motor vehicle in North Dakota sets forth essentially the minimum coverage limit that an insurance company can offer. And I'd like to start with that statutory definition, which again requires a comparison between the applicable limit of bodily injury liability of such policy and the applicable limit of underinsured motorist coverage. The applicable limit of bodily injury insurance does not include property damage coverage. And this specific question was asked by the Prudential Court in the state of New York's highest court, directly asked this question. For purposes of the comparison, should the tort feasor's entire single limit be considered his bodily injury limit, even though the property damage is also contained in the limit? The answer to that is clearly no. The applicable limit of bodily injury liability insurance is the amount available for bodily injury insurance, less any amount that's payable for property damage. Isn't that reading out in effect at the time of the accident? I don't think that it is, Your Honor, because when we look at case law around the country, that also has this at-the-time-of-the-accident language, whether in statute or whether in insurance policy. The courts say that the at-the-time-of-the-accident language isn't clear, and I'd specifically point out the Gonzales case from the Tenth Circuit Court of Appeals, and I'll quote this. The Gonzales case says, the meaning of the phrase, the sum of the limits of liability insurance applicable at the time of the accident, is not self-evident. So at best for Berkeley, this language about at-the-time-of-the-accident, according to the Tenth Circuit Court of Appeals, is ambiguous. What does it mean other than in effect at the time of the accident? So at the time of the accident, she had $1 million. There was $1 million. What's another interpretation of in effect at the time of the accident for that? In effect at the time of the accident, it's just simply referring to the insurance policy at issue. It's not making, or I should say, it's not modifying the term applicable limit. And when we look at the insurance policy in this case, the insurance policy itself doesn't even use the term limit. That comparison is a sum versus limit. So we're not even talking about the applicable limit when we're construing the insurance policy in this context. And I think if we look at that Georgia Court of Appeals case, I believe it's pronounced La Scala, that is really the only case that keys in on this word applicable. And the La Scala case says that applicable, within the meaning of the phrase, applicable limit of liability is a contract capable of only one reasonable construction. So this Georgia Court of Appeals says that at the time of the accident language necessarily cannot even mean those policy limits at the time of the impact of the vehicle. The La Scala court went on to say, you know, that's all theoretical. We're not going to base coverage on that. And I understand Berkeley has distinguished this case on the basis that there's no provision within the statutory definition to account for payments made to other individuals. But even without that provision, the Georgia Court of Appeals concluded that those property damage payments are not part of the applicable limit. And that is the same case here. This court can also conclude that property damage payments are not part of the applicable limit of bodily injury liability insurance, even in the absence of a provision that states otherwise. Do you agree, though, that she could have gotten $1 million for bodily injury? In the absence of a property damage claim, absolutely. But again, I would distinguish that fact, that that is a responsibility of Berkeley to indemnify their insured for up to that $1 million threshold. It doesn't change the fact- Wait a minute. You're asking us to assume it was a split-level policy when it wasn't. I'm not asking you to assume it's a- That's the way I basically interpreted the argument. No, it's a single limit policy, Your Honor. Right. And it was $1 million at the time of the accident for one or the other or both. So there was $1 million available for bodily injury coverage at the time of the accident. I would expect- And you say this is terribly unjust because this limits, this makes your client worse off than someone who was injured by someone with no policy. Correct. Okay, now let me take that. Let me make sure. As I understand your position, it is that your client had coming to her in this situation $1,960,000 worth of coverage. Well, yes, we agree with that, yeah. Yeah. That's- So she's worse off than if she had been hit by someone who had no- No, I'm saying- According to Berkeley's interpretation of the policy, she is worse off. Because in the absence- Wait a minute. What do you mean in- I don't understand that. She's getting $1,960,000. Yes, according to- She's getting $1 million. She's getting $960,000. She's getting- Well, all right. Correct. And your view is that she was entitled to $1,960,000. Correct. But under Berkeley's interpretation of the policy, should the Eighth Circuit affirm the district court's order, that would have meant had this tortfeasor had no liability insurance whatsoever- That's not this case. Correct. All right. Well, don't tell us that this case must go in a certain- that the next case must go in a certain way. Okay. And with respect to your question about the availability of the $1 million of liability insurance, I want to point out that North Dakota law specifically requires that every motor vehicle liability insurance policy has $25,000 worth of property damage coverage. Being that that is the case here, as a matter of law, this Berkeley policy provided at least $25,000 worth of property damage coverage. On the balance, that would necessarily mean that only $975,000 was available for any sort of bodily injury claim. One more point I do want to make before I reserve the rest of my time for rebuttal. We also believe that the district court erred in its interpretation because it did fail to ascertain and effectuate legislative attempt. The 1989 legislation changed North Dakota's gap coverage to excess coverage to reflect the legislative purpose of making insureds whole. The interpretation being proffered by Berkeley undermines that public policy of making insureds whole. And I ask the question, do we really think that the legislature intended to provide these provisions to allow for an offset for bodily injury claims, but at the same time intended that the torque fees or property damage insurance would be included in the applicable limit of bodily injury liability insurance? I think the answer to that is no, because again, property damage coverage is not part of bodily injury liability insurance. So unless there is any other questions, I would like- Do you agree that the $40,000 was not paid, quote, to other persons injured in the accident? I do agree with that. All right, so section 1.2.b of the statute does not apply, right? Correct. So what is the statutory argument then? That property damage is not part of bodily injury insurance. What section of the statute applies if that one doesn't? I read your brief as arguing both statute and policy. Right. And then I, so I come to a provision that seems to exclude the statute from this situation. So I'm asking, how does the statute apply? Well, when we first begin reading the statute, it says the applicable limit of bodily injury liability insurance. Again, it's Ms. Burnick-Odom's position that property damage insurance is simply not part of bodily injury insurance. So is this a bodily injury liability insurance policy? I would concede that it is, Your Honor. However, the fact- So you have to take that position. Correct. But you want to say it is a bodily injury liability insurance policy, but the applicable limit of bodily insurance liability is not the full limit of the bodily insurance liability policy? Correct. It is the only amount that's available for bodily injury claims, or in the case of North Dakota where there is a statutory mandate that every insurance policy have $25,000 worth of property damage coverage. Again, that would necessarily mean that only $970,000 of this policy was essentially available for any type of bodily injury claim in that $975,000. Well, on that point, I thought you had agreed that the full million was available if there's no property damage claim. Yes. Even though North Dakota requires $25,000 for property damage. Correct. And the distinction I would make with that is that, being that this is an insurance policy, Berkeley would have an obligation under that policy to indemnify its insured up to that million-dollar limit. However, that doesn't discount for the fact or erase the fact that North Dakota law does mandate and require every insurance policy to have this $25,000 worth of property damage coverage. See, I have about three and a half minutes left. I'd like to reserve that for rebuttal. Thank you. Thank you. Ms. Sarp. Good morning, Your Honors. May it please the Court, my name is Paulette Sarp, and I am the attorney for Berkeley Regional Insurance Company in this matter. I think that based on the questions you asked my opposing counsel, Your Honors have essentially drilled down to the issue here. And that is, first of all, under North Dakota law and the policy, there are two ways you can become an underinsured vehicle. One is based on the comparison of the limits at the time of the accident. The other is after the accident, if there have been payments made for bodily injury that reduce the tort fees limit. Opposing counsel Odom, as we pointed out in our brief, they have conceded that Part B doesn't apply, that the $40,000 that was paid for property damage does not reduce the million-dollar limit under Subpart B, because it's property damage, it only refers to injury. And that's consistent with case law. So they focused on Subpart A, and as Your Honor pointed out, effectively asked this Court to write out of Part A the at-the-time-of-the-accident language. Subpart A and Subpart B are, one is before the accident, one is after the accident. They focus on Subpart A, but what they really want you to do is to engraft language from Part B and say, well, if after the accident there were payments made for property damage that would reduce the limit, somehow that affects Subpart A. And they're two completely separate provisions to ignore what the limit was at the time of the accident, just nullifies the at-the-time-of-the-accident language, and that under any state's statutory interpretation law is wrong. The District Court got that right. You can't write that out of there. What about the fact that it's a single-limit liability policy? I think Your Honor, Judge Loken got that correct. He is essentially asking you to say that it's a split-limit policy. It's not a split-limit policy. We're not asking the court to add a separate property damage limit to a bodily injury limit and say, hey, look at that, then compare it to the UIM. As opposing counsel conceded, that full million dollars would have been, could have been available for bodily injury damages. It's no different here than if, for example, there had been an accident before the Odom accident where a million-dollar policy limit for bodily injury demand was made to Berkeley. Berkeley would have been able to and obligated most likely to pay that full million and not hold back a $25,000 proceeds in case in the future there might be a property damage claim. That's not the way it works. What about the New York case that seems quite similar? The Sully case? Why shouldn't we predict that North Dakota would agree with that approach and say that the purpose of this statute is to make sure that the person has a million dollars, say in this case, for bodily injury? Sure. Well, first of all, the party here would have, at the time of the accident, had a million dollars available. I'm glad you brought up Sully because I think there's something that needs to be, a couple things that need to be noted about that case. The first thing is that at the time it was issued, the statute, the underinsured motorist statute that applied, and this is addressed in the opinion, only contained what I'm going to call the subpart B, looking at the limits at the time of the accident. There was no subpart B like North Dakota has, which gives you the option of looking at payments that are made and could have been made after the accident. After Sully was issued or after the policy in that case was issued, the court notes in its footnote that the legislators in New York issued regulations that essentially adopted the same part B language that we have here in North Dakota and note that a vehicle can become underinsured after the accident if there have been payments made for injury. The court notes in its footnote that had those regulations been before it, its opinion could have been different. It doesn't have to address it because they weren't before that court. But I think it's a fair assumption, just like all of the cases that opposing counsel relies on, for this notion that you have to look at payments made or that could have been made after the accident. None of those cases have the two-part provision that North Dakota has and now that New York has. So I would suggest that Sully, first of all, is of no import here because the law in New York, the regulations that are decided, I believe in footnote two, significantly change the statute that's at issue there and make it like the North Dakota statute. And when you have the two distinct parts, like we do, there's no way you can read those two provisions together and come up with the notion that even though there's a full million dollars available in bodily injury, that you still have to take out a theoretical $25,000 for a potential property damage claim that may never surface, that may never come to fruition. There's not a single case that they cite that suggests that. We do cite, too, I believe it is the Explorer Insurance Company versus Gonzalez, it's a California case, that does apply a single limit and does not subtract for any sort of bodily, I'm sorry, any sort of property damage mandatory limit. It does the limit to limit comparison, which is exactly what North Dakota requires, one million to one million. I would like to point out, too, I think a large part of opposing counsel's argument is fairness, that this doesn't seem fair that Ms. Odom, if there's no underinsured motorist, may not have all her damages compensated. I would suggest that the way the North Dakota statute is set up, there may be a lot of cases where you could argue it's unfair. If there is, let's say there was a split limit toward FISA policy, $1 million bodily injury, the UIM has $1,010,000 in underinsured motorist coverage. There can be that tiny distinction in the limits and it forecloses all right to underinsured motorist coverage, even though the insured purchased it. So, you know, North Dakota's, and I think if you read the legislative history, obviously a large part of that was the cost that might be charged to an insured, where if there was always underinsured motorist exposure, that's not the system that North Dakota went with. And so there are going to be situations where even just a minor difference in limits between the tort FISA and the UIM is going to preclude all potential coverage. Whether that's fair or not is really not for this court to decide. It's the legislature. That's what the legislature has in effect, and I don't think even Odom would dispute that there are going to be cases like that. And so this concept of fairness, I think, you know, if there is some issue with that, that's something that needs to be addressed with the legislature. And again, I think it's important that opposing counsel, having conceded that Part B doesn't apply, that you can't reduce the, under Part B, the limits for any property damage payments are made. He agrees that that can't be done under Part B, but he wants it to be done under Part A. It's just, it doesn't make any sense. It completely conflates the two prongs and renders really Part B meaningless, and that's just not proper legislative interpretation of the policy or the legislation. And so, Your Honor, we would request that the court affirm the district court's ruling and hold as a matter of law that both the North Dakota statute and the policy unambiguously provide that the tortfeasor's vehicle here was not underinsured and that Berkeley does not have an obligation to pay underinsured motorist benefits. Berkeley made the claim to Zurich that resulted in the $40,000 payment to Berkeley's insured. Correct. I take it there is, I don't see any hint that there was any questioning of that timing, any kind of a bad faith or collusion. No, and in fact, if you look at the letters, I believe that are attached as part of the record, a present counsel threatened that if Berkeley withdrew its subrogation claim and withdrew its claim for $40,000, that might be bad faith. Because I guess in their opinion, they thought that by that $40,000 payment being made, they had successfully depleted the tortfeasor limits and created underinsured motorist coverage. So if anything, it was the opposite. I suppose it is more than theoretically possible that the two insurers could collude with respect to the timing. And you pointed out that if the 40, just because there might be property damage claims out there doesn't mean your client wouldn't be obligated and indeed would pay a million dollars. Correct, be obligated to. $40,000 had not been paid when the million dollar claim came in. It would not change the analysis here, Your Honor, because that $40,000 that was paid under the tortfeasor. $40,000 hadn't been claimed. Right, either way. The statutes only allow for a reduction in the tortfeasor limit for bodily injury payments. The Post and Counsel concedes that. So even though the $40,000 in property damage was paid, that really is neither here nor there. Because under Part B, that payment being made does not reduce the tortfeasor's limit. It doesn't do it under Part B, and it doesn't do it under Part A. But the timing of payments under Part B, I suppose, would affect the underinsured question, huh? Well, I guess I'm not quite sure. Clearly if there are payments made after an accident and they are for bodily injury. But I mean the timing of whether those payments are made under Part B vis-a-vis when the claim is made for the bodily injury to the insured. Anyway, this is not relevant to this. Well, I guess it could affect the amount that's available, correct? Yeah. But if the... All right, I see. You're saying if you just focus on Part A, time of accident. And the full million was there. None of this matters. And even the Post and Counsel says the full million was available for bodily injury at the time of the accident. And if we had been presented with a claim, I'm sorry, not we, but Zurich, that only involved bodily injury, that full million would have been available. There's no obligation to hold back for some future claim. And so the limits were the same. Whether Post and Counsel thinks it's fair or not, that's the way the legislature set it up. And we would ask that the court affirm the district court's ruling and uphold the plain language of both the statute and the Berkeley policy. If there are no other questions, I thank you, Your Honor. Thank you. Mr. Seward, rebuttal. Your Honors, I want to quickly address just a few issues on rebuttal. Sorry if it's a bit discombobulated. I'm jumping around, but I want to start off with the Post and Counsel's remarks relating to the Explorer insurance case from California. I'd just like to point out to the court how that's distinguishable. California follows a much different jurisprudence than North Dakota does with respect to underinsured motorist laws. They still follow a narrow gap theory of coverage, whereas North Dakota follows the excess coverage. Also, in Gonzalez, the injured claimant there was able to make a claim against the entire policy of the tort fees. Obviously, that's not the case here. Second issue I want to address is with regard to Post and Counsel's comments on fairness. We're not up here arguing unfairness or that this isn't fair. We're simply arguing that the district court failed to adopt the interpretation that furthers legislative intent of making insureds hold. Post and Counsel also mentioned that our argument made subpart B of the statutory definition superfluous. I would just reference page 10 of Appellant's reply brief. That sets forth a perfect example of why Appellant's interpretation does not render part B superfluous. Well, the argument wasn't superfluous. It doesn't apply. And you can't take the post-accident focus of part B and plug it into part A. That's not superfluous. Well, I understand that Opposing Counsel has made that argument, but they have also made the argument that subpart B is superfluous. Well, not this morning. OK. What about Opposing Counsel's distinguishing of the New York case? I still believe that answers the question in front of this court. There's no way that the North Dakota legislature intended to allow an offset for payments to other individuals who are injured in tort for a bodily injury claim, but then to add that property damage claim with the bodily injury liability limits. Again, when we look at that statutory definition... Part B, then, if it's so obvious. I mean, how can we read that in? Because the North Dakota legislature, when they were drafting the underinsured motorist laws, only contemplated that this would apply to bodily injury claims. From the outset, it talks about... They didn't know about single limit policies? I would like to assume they did know about single limit policies, but, you know, when we read the legislative history that is attached in the appendix, again, it only talks about these sorts of bodily injury claims. Again, I can't imagine the North Dakota legislature intended a situation where payments to other bodily injury claims would be offset, but at the same time, allowing these property damage claims to be included with those bodily injury limits. So for the reasons set forth today, we'd respectfully request that the Eighth Circuit reverse and remand in favor of Ms. Burnick-Odom. Thank you. Thank you, Counsel. The case has been thoroughly briefed and argued, and we will take it under advisement.